IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

In re:                              }
                                    }
Mountain Farms, LLC,                }         Case no. 16-41682-JJR12
                                    }
        Debtor.                     }

**OPINION AND ORDER GRANTING MOTION FOR RELIEF FROM STAY**

This chapter 12 case came before the court on January 31, 2017 for an evidentiary hearing on the Motion for Relief from Stay ("Motion" Doc. 15) filed by Carol Oakes as Executrix of the Estate of John T. Oakes, deceased ("Oakes"). Appearances were made by Carla M. Handy, attorney for the debtor, Mountain Farms, LLC ("Mt. Farms"); Michael E. Bybee, attorney for Oakes; and Joshua Johnson, attorney for C. David Cottingham, the chapter 12 trustee. In reaching its decision in this matter, the court considered the following: (i) the pleadings, (ii) exhibits allowed into evidence at the hearing, (iii) documents of record in this case, (iv) documents of record in Mt. Farms' previously dismissed chapter 12 case, (v) documents of record in an active chapter 13 case filed by Mt. Farms' former member, Jo Ann Reed ("Reed"), (vi) documents of record in a now-closed chapter 7 case filed by Reed, (vii) Reed's testimony at the hearing, (viii) arguments of counsel, and (vii) the relevant statutory and case law. Based on the foregoing and for the reasons stated below, the court has determined the Motion should be granted.

The operative facts in this contested matter are, at times, tedious and difficult to follow, but for the most part are undisputed. On September 3, 2008, Mt. Farms purchased approximately 52 acres located at 13170 Renfro Road, Alpine, Alabama (the "Property") from John T. Oakes ("the Seller"), who is now deceased and is represented in this matter by the

executrix of his estate. The total purchase price was $155,000, of which $139,500 was to be paid with purchase-money mortgage financing. Mt. Farms executed a $139,500 promissory note dated September 3, 2008 payable to the Seller, and secured the note with a mortgage on the Property. (Oakes Ex. 1.) The probate judge's stamp on the mortgage confirmed it was duly recorded on October 21, 2008. At the time of the purchase, Reed owned 100% of the membership interest in Mt. Farms.

To induce the Seller to extend purchase-money financing to Mt. Farms, Reed and Allan E. Parks ("Parks")[1] executed a guaranty in which they "absolutely and unconditionally guarantee[d]" payment of the $139,500 note to the Seller and his "successors and assigns." (Oakes Exhibit 1.) Reed and Parks reside in a modular home they placed on the Property after the purchase.[2] Reed described the relationship between herself and Parks as "life partners" – they have lived together for several years and are tantamount to husband and wife.

Before Mt. Farms purchased the Property, its membership interest was owned by Parks, but in May 2007 Parks transferred what had been his 100% membership interest in Mt. Farms to Reed (Oakes Ex. 2) in an effort to qualify for loan programs favoring women farmers. Although Reed then became the owner of all the membership interest in Mt. Farms, at the same time Parks was named as its managing director. (*Id.*) According to Reed, during the fall of 2009, after Mt. Farms had purchased the Property, she and Parks had a serious disagreement, and in an effort to prevent Parks from selling the Property as he had threatened, she executed a deed on December 30, 2009 in her capacity as sole member of Mt. Farms, conveying the Property to herself,

---

[1] Parks has been a debtor individually in three prior bankruptcy cases, all of which pre-date the formation of Mt. Farms. *See* Case Nos. 05-41916-TBB7; 02-41833-JSS12; and 84-01165-LCW7.

[2] An attachment to the mortgage exempts any mobile home from the lien of the mortgage.

individually. (Oakes Ex. 3.) Parks was unaware of the conveyance at the time, but Reed told him about the deed approximately three weeks later. Reed testified that she and Parks never attempted to use the Property to collateralize a loan (aside from the purchase-money obligation owed to Oakes) and she never conveyed the Property back to Mt. Farms. Thus, the record title to the Property remains vested in Reed, individually, as fee owner. Nonetheless, according to Reed, Mt. Farms has consistently used the Property for farming operations. At some point, the full membership interest in Mt. Farms was transferred from Reed back to Parks, who currently owns 100% of the membership interest. But, as mentioned, the record title to the Property remains vested in Reed.

The ownership of the Property as shown by the deeds of record conflict with the schedules filed by Mt. Farms in this case. Those schedules state that the Property is owned by Mt. Farms and do not mention that record title is vested in Reed. Although not mentioned in its schedules or statement of financial affairs, Mt. Farms' claim to the Property is set forth in its complaint filed against Reed in an adversary proceeding. (AP 16-40044-JJR.) The essence of the complaint is that the 2009 conveyance of the Property from Mt. Farms to Reed is due to be avoided as a fraudulent transfer. Mt. Farms alleged that Reed, as its sole member, caused the transfer to be made with actual intent to defraud creditors and Parks. (AP Doc. 1.) According to a certificate of service filed in the adversary proceeding, the complaint, along with a summons, was duly served on Reed, but she failed to answer or otherwise respond. Pursuant to Rule 7055, applying Fed. R. Civ. P. 55 to bankruptcy adversary proceedings, Mt. Farms filed an affidavit confirming that Reed had not timely responded to the complaint, and as required by that Rule, the clerk entered Reed's default on the record. Mt. Farms has not applied to the court for a default judgment.

3

As discussed below, Reed is a debtor in an active chapter 13 case filed in this court. She filed that case before Mt. Farms filed the adversary proceeding seeking to avoid the transfer of the Property to her as a fraudulent transfer. The automatic stay imposed by Code § 362(a) was in effect in Reed's chapter 13 case when the adversary proceeding was commenced but Mt. Farms never sought stay relief before filing its adversary complaint against Reed. Reed never complained that Mt. Farms violated the stay in her case; further evidence that the adversary proceeding is not between true adversaries, but rather is a cooperative effort among Reed, Parks, and Mt. Farms to wrongfully delay Oakes from foreclosing on the purchase-money mortgage.

The payments due to Oakes on the purchase-money note and mortgage are in default; according to Oakes the default extends from January 2012 to the present, but Reed contends they are unpaid only from January 2013. The parties agree, however, that the outstanding principal and interest on the note and mortgage exceed $166,000. And in its proposed chapter 12 plan, Mt. Farms valued the Property at $157,000 (Doc. 52); thus there is no equity. But in addition to the dearth of disclosure in Mt. Farms' schedules pertaining to Reed's ownership of the Property and the fact that Mt. Farms' ownership claim is contingent on the outcome of a dubious adversary proceeding against Reed (the life-partner of Mt. Farms' owner), there are inconsistencies and omissions in the bankruptcy pleadings and documents filed by Reed and by Mt. Farms – controlled by Parks – that cause the court to question their good faith.

This is Mt. Farms' second chapter 12 case. The first was filed on April 13, 2012 under the direction of Parks (case no. 12-40694 and herein the "2012 Case").[3] According to Oakes'

---

[3] No one, including the attorneys, mentioned the 2012 Case at the hearing on the Motion, and it is not mentioned in any of the pleadings or other filings in the instant case. In fact, as discussed in the text, it appears that Oakes, although a creditor, was never notified of the 2012 Case. The court discovered the 2012 Case through a search of its EM/ECF electronic records.

4

Motion, the default in payments on the purchase money mortgage began around the same time the 2012 Case was filed. A plan was confirmed in the 2012 case, but that case was later dismissed on April 2, 2014 due to a default in plan payments.

The schedules filed in the 2012 Case stated that Mt. Farms owned no real property, but that it was leasing the Property from Reed (2012 Case Doc. 11 p. 2 listing "Home & 60 acres" at the Property address as "Leased Property"; and Doc. 11 p. 9 showing the Property being leased from Reed and that the lease was to be assumed.) There was no mention in the schedules or statement of financial affairs filed in the 2012 Case that Mt. Farms had a cause of action to avoid the transfer of the Property to Reed. Moreover, those same schedules did not show Oakes as a creditor, although Mt. Farms was then indebted to Oakes under the 2008 purchase-money note and mortgage. Likewise, the creditor-matrix filed in the 2012 Case did not list Oakes as a party who was to receive notices in the case. And significantly, the 2012 Case was not listed on the petition filed in the instant case. (Docs. 1, 12, Voluntary Petition and Amended Petition, parts 9: "Were prior bankruptcy cases filed by or against the debtor within the last 8 years?" – answer: "No".) During her testimony at the hearing on the Motion, Reed never mentioned the 2012 Case or that she had ever leased the Property to Mt. Farms. The schedules filed in the instant case, unlike those filed in the 2012 Case, do not disclose any lease of the Property.[4]

Reed, like Mt. Farms, is no stranger to the bankruptcy court. As mentioned earlier, she is a debtor in an active chapter 13 case (case no. 16-40508-JJR13) filed in this court on March 18,

---

The court takes judicial notice of its own files, especially when they pertain to a party and its affiliates.

[4] The attorney representing Mt. Farms in the instant case did not represent it during the 2012 Case, and the court assumes that attorney did not have actual knowledge of the earlier case. The attorney who is representing Reed in her active chapter 13 case, also represented her in her previous chapter 7 case, and represented Mt. Farms in its 2012 Case.

5

2016, seven months before Mt. Farms filed the instant chapter 12 case. In her chapter 13 schedules she listed the Property as an asset of her estate. (16-40508 Doc. 1 p. 9.) She also listed Oakes as a secured creditor (16-40508 Doc. 1 p. 21) and provided in her proposed plan (16-40508 Doc. 37) that an unidentified third party (presumably Parks or Mt. Farms) would make the payments on the Oakes mortgage, but made no provision to cure the arrears. In Reed's chapter 13 case, Oakes objected to plan confirmation and filed a motion to lift the stay with respect to its mortgage on the Property. To settle Oakes' objection to confirmation and lift-stay motion, Reed, through counsel, consented to Oakes' receiving stay relief, but in return, Oakes agreed to delay the foreclosure publication and sale. (16-40508 Doc. 71, the "Consent Order.") Reed's and Oakes' agreement was incorporated into the plan confirmation order (16-40508 Doc. 75): "Any stay imposed by Rule 4001(a)(3) is hereby waived and relief afford to Carol Oakes is awarded, starting 60 days from the date of this Order to facilitate publication of foreclosure only. Thereafter, [Oakes] is granted full and final relief 90 days after date of this Order." The confirmation order was dated July 12, 2016, but on October 12, 2016 – as the 90-day grace period was expiring – Mt. Farms filed the instant chapter 12 case claiming the Property was owned by its bankruptcy estate (Doc. 1 p. 9) and, therefore, protected by the automatic stay.

Slightly more than two years before Reed commenced her present chapter 13 case, she filed a chapter 7 case (case no. 13-42121-JJR7 filed December 3, 2013), and was granted a discharge on March 11, 2014 (13-42121 Doc. 41). Her schedules and county tax appraisal filed in the chapter 7 case stated she was the owner of the Property, and like her chapter 13 case, she made no mention of Mt. Farms as a lessee, or of a potential claim for fraudulent transfer, or otherwise. (13-42121 Doc. 1, p. 7; Doc. 2). In her initial filings, Reed did not schedule Oakes as a creditor in the chapter 7 case, but she later amended her schedules on February 18, 2014 to list

6

Oakes as a secured creditor, but did not disclose the collateral that secured Oakes' claim. (13-42121 Doc. 34.)

As mentioned at the beginning, the facts can be difficult to follow, especially in light of the inconsistencies. A chronological summary may help:

(1) In Mt. Farms' 2012 Case, it represented that it leased the Property from Reed, the Property's record owner, and made no mention that it had a claim against Reed for fraudulent transfer of the Property.

(2) In Reed's 2013 chapter 7 case, she represented the Property belonged to her, and made no mention of the Property being leased to Mt. Farms or that it was subject to a fraudulent transfer claim.

(3) In Reed's present chapter 13 case, she again represented that the Property belonged to her, and in return for Oakes' delaying a foreclosure sale for 90 days and withdrawing an objection to plan confirmation, she consented to Oakes' demand for stay relief.

(4) As the 90-day grace period agreed to in Reed's chapter 13 case was expiring, Mt. Farms filed the instant chapter 12 case, and represented in its schedules that the Property is property of its bankruptcy estate. The schedules make no mention that the record title of the Property is vested in Reed; that Reed, a former owner of Mt. Farms and a life partner of its present owner, had consented to stay relief in her chapter 13 case; or that Mt. Farms had a fraudulent transfer claim against Reed.

(5) In the instant chapter 12 case, Mt. Farms seeks to again bring the Property beneath the protection of the automatic stay by asserting that the record title it conveyed to Reed in 2009 should be avoided as a fraudulent transfer.

7

At different times, Mt. Farms has been, and continues to be, owned and controlled by Reed and Parks, who are life partners, and the three – Mt. Farms, Reed, and Parks – have never conducted their affairs at arms' length; they are "affiliates" and should be treated as a single entity. *Cf* Code § 101(2). They cannot be allowed to benefit from their respective inconsistent positions and representations, whether overt or by omission.

Oakes' principal argument for stay relief is that the Property is simply not property of Mt. Farms' chapter 12 bankruptcy estate under Code §§ 341 and 1207; thus there is no stay in effect with respect to Oakes' mortgage. The court agrees. It is fundamentally unfair for Reed to have consented to stay relief in her chapter 13 case, and then allow, or perhaps cause, her affiliated limited liability company – Mt. Farms – to assert an incestuous fraudulent transfer claim in an effort to bring the Property under the automatic stay imposed in Mt. Farms' case and further stymie Oakes from exercising its legitimate rights as mortgagee. Even if the insider relationship among the three – Reed, Parks, and Mt. Farms – were ignored, the time to assert that the conveyance from Mt. Farms to Reed was fraudulent was when Mt. Farms filed its first chapter 12 case in 2012. It is too late for Mt. Farms to now claim that it should be declared the owner of the Property in a fraudulent transfer action, when in its 2012 case, it was comfortable representing it was in possession of the Property as a lessee. A fraudulent transfer claim would have been an asset that should have been disclosed on the schedules in the 2012 case. In the same vein, due to their close relationship, the court will not allow Reed to represent in her two bankruptcy cases that she owned the Property, and then allow her two affiliates, Parks and Mt. Farms, to claim Mt. Farms was the victim of a fraudulent transfer perpetrated by Reed.

In *In re Failla*, 838 F3d. 1170 (11th Cir. 2016), the Eleventh Circuit held that chapter 7 debtors who stated an intent to surrender property could not oppose a foreclosure action in state

8

court after the bankruptcy was over. Because of the debtors' choice to surrender the property, the bankruptcy court had the authority to force the debtors to drop their opposition to the foreclosure action in state court. *Id.* at 1178. "In bankruptcy, as in life, a person does not get to have his cake and eat it too." *Id.* This same truism applies with even more force here because Reed did not simply state an intent to let the Property be foreclosed; she went so far as to negotiate detailed provisions of an agreement to lift the stay, and that agreement was then formalized by this court in not one but two orders (the Consent Order and the order confirming Reed's chapter 13 plan). The fact that the attack on the right to foreclose is now being made by an LLC-affiliate (Mt. Farms) owned and controlled by Reed's life partner is a difference without a distinction. A person does not get to have her cake and let her partner eat it, either. [5]

---

[5] Inasmuch as Mt. Farms, Reed, and Parks all have the same interests, and should be seen as having common objectives – retaining the Property at the expense of Oakes – principles of judicial estoppel prohibit them from taking inconsistent positions among themselves. As recently explained by Judge Jennemann of the U. S. Bankruptcy Court for the Middle District of Florida :

> Courts in the Eleventh Circuit have considered two factors when deciding whether to apply judicial estoppel. First, 'the allegedly inconsistent positions [must have been] made under oath in a prior proceeding,' and second, '[s]uch inconsistencies must be shown to have been calculated to make a mockery of the judicial system.' The United States Supreme Court explained courts may consider several other factors when examining judicial estoppel but noted this doctrine could not be reduced to any general formulation or principle. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). The other factors the Supreme Court mentioned are:
>> First, ... a party's later position must be 'clearly inconsistent' with its earlier position; Second, ... whether the party has succeeded in persuading a court to accept [the] earlier position, so that judicial acceptance of [the] inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled'; [and third,] whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party.
>> *Id.* at 750-51.

9

As mentioned, the amount owing to Oakes leaves no equity in the Property for anyone's bankruptcy estate, and there is no adequate protection offered by anyone. Oakes has not been paid anything for years, and allowing Mt. Farms, and its affiliates, to play games in the bankruptcy court by making assorted representations about who owns and leases the Property, smacks of bad faith and manipulation, and is not unlike the shenanigans Congress sought to prohibit under Code § 362(d)(4): "[T]he court shall grant relief from the stay . . . if the court finds that the filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved either – (A) transfer of all or part ownership of, or other interest in such real property without the consent of the secured creditor or court approval; or (B) multiple bankruptcy filings affecting such real property." Code § 362(d)(4).

Accordingly, based on the above findings and conclusions, the Motion (Doc. 15) is GRANTED, and it is hereby ORDERED that –

(i) the Property is not subject to the automatic stay imposed under Code § 362(a) in this chapter 12 case because the Property is not property of Mt. Farms' bankruptcy estate;

(ii) nonetheless, to the extent Mt. Farms may have any rights in the Property, equitable, contingent, possessory, or otherwise, the automatic stay is hereby immediately terminated pursuant to Code § 362(d) to allow Oakes to exercise all

---

Above all, the Court should give due consideration to all of the circumstances in a particular case because judicial estoppel is a flexible rule.

*In re Advanced Telecomm. Network, Inc.*, No. 6:03-BK-00299-KSJ, 2016 WL 6407366, at *2 (Bankr. M.D. Fla. Oct. 28, 2016) (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002) and pointing out that the Eleventh Circuit likely will clarify its application of judicial estoppel in bankruptcy cases in its *en banc* rehearing of *Slater v. U.S. Steel Corp.*, 820 F.3d 1193 (11th Cir. 2016)).

its rights and remedies with respect to its mortgage against the Property and against Mt. Farms to gain possession of the Property; and

(iii)  the 14-day stay otherwise imposed under Rule 4001(a)(3) shall NOT be imposed with respect to this order.

So done and ordered this 14th day of February 2017.

/s/ James J. Robinson
JAMES J. ROBINSON
CHIEF U.S. BANKRUPTCY JUDGE
